<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALBERT TURKMANY, | : |
|                     Plaintiff, | :   Civil Action No. 12-142 (ES) |
| v. | : |
| EXCELSIOR INSURANCE CO., | :   OPINION |
|                     Defendant. | : |

<u>SALAS, DISTRICT JUDGE</u>

Pending before the Court is Defendant Excelsior Insurance Company's ("Defendant") motion for summary judgment. (D.E. No. 25, Brief in Support of the Motion for Summary Judgment of Defendant, Excelsior Insurance Company, ("Def. Br.")). The Court held oral argument on this motion on March 10, 2014. For the following reasons, Defendant's motion for summary judgment is GRANTED.

    **I.**    **FACTUAL BACKGROUND**

Plaintiff Albert Turkmany ("Plaintiff") is the homeowner of a property located at 136 Valley Road, Wayne, New Jersey which was damaged by fire on October 25, 2009. (D.E. No. 25-2, Defendant's Statement of Undisputed Facts ("Def. SOF") ¶¶ 1-2). Defendant issued a policy of insurance ("the Policy") covering Plaintiff's home, other structures and personal property located at the property. (*Id.* ¶¶ 3, 5). The fire is a covered cause of loss pursuant to the terms of the Policy. (*Id.* ¶ 7).

Defendant paid a total of $181,255.94 for the actual cash value of the damage to the structure, in two installments: one for $144,447.55, (D.E. No. 25-16, Exhibit G, ("Swanson Letter")), and one for $36,808.39, (D.E. No. 25-16, Exhibit M, ("Ellis Letter")).

Defendant paid $114,429.19 for the actual cash value of the personal property damage to the alleged cause of loss. (Def. SOF ¶ 20).

Prior to the fire, Plaintiff made a claim for mold in his house. (*Id.* ¶¶ 11-12). Plaintiff claims that there was no observable sitting water in his house prior to the fire, but there was observable sitting water in it at some time after the fire. (D.E. No. 28-1, Certification of Albert Turkmany, ("Turkmany Cert.") ¶ 5)). There was also damage to property in Plaintiff's garage. (Turkmany Cert. ¶ 3).

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex,* 477 U.S. at 324. The Court must, however, consider all facts and their reasonable inferences in

the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

### III.  LEGAL ANALYSIS

#### A. Plaintiff timely filed the instant Action

Defendant argues that because the Policy limited Plaintiff's time to file suit to within one year of the date of loss, Plaintiff's suit should be dismissed because Plaintiff did not file within that time period. (Def. Br. at 9-10). Defendant further argues that since Plaintiff's claim was never declined, there is no tolling of the one-year limitation period. (D.E. No. 32, Reply Brief in Support of Excelsior Insurance Company's Motion for Summary Judgment, ("Def. Rep. Br.") at 3-4). Plaintiff argues that New Jersey law provides a tolling of the statute of limitations for a breach of contract suit against an insurer until liability is declined by the insurance company and thus, Plaintiff's suit was timely filed. (D.E. No. 28, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, ("Pl. Br.") at 2-3).

In New Jersey, "the period of limitation [runs] from the date of the casualty but [is tolled] from the time an insured gives notice until liability is formally declined." *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 521 (1970). Here, on February 6, 2011, Plaintiff received a letter from Defendant stating that "[Defendant has] completed [its] damage assessment as it relates to the current condition of you home." (D.E. No. 25-16, Ex. M, Ellis Letter).

In accordance with *Peloso*, the Court finds that, at most, February 6, 2011 was the earliest date of the beginning of the 12-month limitations period because the February 6, 2011 Letter gives some indication that no further payment will be made by its language that Defendant *completed* its assessment. Thus, Plaintiff timely filed the instant action and the limitation provision does not bar it.

3

This result is in line with the New Jersey Supreme Court's reasoning in *Peloso* which sought to protect insureds from the potential prejudice they would suffer if insurance companies were able to delay resolution of a claim, then pay less than an insured deserves, and yet be immune from suit based on the limitations period. As such, the Court holds that the limitations period of an insurance policy begins to run once an insurer flatly states that the insured will not be paid any additional funds on a claim.[1]

**B. Plaintiff Has Not Presented Evidence of a Genuine Issue of Material Fact as to Breach of Contract For Failure To Pay Actual Cash Value ("ACV") On Contents**

    **i. Disputed Replacement Cost Value ("RCV") Without a Depreciation Value is Insufficient to Dispute ACV**

As to contents, Defendant argues that Plaintiff has failed to dispute ACV because Plaintiff failed to provide any record evidence of disputed ACV, which is distinct from RCV. Thus, Defendant argues that the Court should grant summary judgment in its favor. (Def. Rep. Br. at 7-10).

Plaintiff argues that since $99,447.00 of claimed RCV was "not on Enservio's Inventory," (D.E. No. 25-9, Ex. J at 4), there is a dispute as to RCV, which raises a genuine issue of material fact as to whether Defendant failed to pay ACV as required by the policy. (D.E. No. 41, Transcript of Proceedings Held on March 10, 2014, ("Tr.") at 17:1-18:21). Plaintiff essentially asserts that a RCV dispute necessarily implicates an ACV dispute because that is the only reasonable inference of a RCV dispute.

The policy states, regarding personal property/contents, that "[c]overed property losses are settled as follows: . . . personal property . . . at actual cash value at the time of loss." (D.E.

---

[1] Defendant, in reply, argues that *Schneider Nat. Carriers, Inc. v. Newport Distribution Servs., Inc.*, 2007 WL 2509673, at *7 (D.N.J. Aug. 30, 2007) supports its argument that the limitation period should not be tolled. However, *Schneider* held the opposite. In *Schneider*, the Court held that a Limitation of Action Provision is tolled until there is a formal denial of claim. Further, the *Schneider* court held that in that case, there was no formal denial and thus the tolling of the limitation period never ended before plaintiff filed suit.

4

No. 25-6, the Policy at Turk000807—or—10 of 18). The policy does not define the term "actual cash value." Essentially, the parties are asking the Court to determine whether evidence of a dispute between the parties on RCV necessarily indicates a dispute in value on ACV. If there is a dispute in ACV, then Plaintiff has created a genuine issue of material fact as to whether the Defendant breached the contract by paying an improper ACV.

While RCV and ACV have some relationship, they are distinct values. The New Jersey Supreme Court has recognized the distinction between these values when it held that an appraisal based on RCV (without consideration of depreciation) is an improper measure of ACV. *Elberon Bathing Co., Inc. v. Ambassador Ins. Co., Inc.*, 77 N.J. 1, 6-10 (1978). The Court elaborated that "[a] standard of replacement without depreciation is inconsistent with the intent and the language of the statute which . . . provides for insurance to the extent of the actual cash value of the property." *Id.* at 7. To be sure, "an appraisal based on replacement cost without consideration of depreciation does not measure 'actual cash value.'" *Id.* at 10. "[T]o the extent that replacement cost is or may be a proper criterion of actual cash value, there must normally be a deduction for depreciation lest the insured receive more than indemnity for his loss. In failing to make such a deduction, the appraisers . . . committed a mistake of law." *Id.* at 15.

Thus, the New Jersey Supreme Court clearly stated that RCV alone does not measure ACV. And, it is clear, based on *Elberon*, that in order to challenge an insurer's proffered ACV using a RCV, an insured would need to also offer record evidence of a depreciation value. Since the applicable rule of law requires both RCV and a depreciation value, an insured must cite particular parts of materials in the record to support the existence of both of these values.

Here, as to contents, the parties have a clear dispute as to RCV: Plaintiff's public adjuster, North Jersey Public Adjusters, proffers a RCV of $333,922.44, (D.E. No. 25-10, Ex. K,

5

North Jersey Public Adjusters' Inventory of Contents), while Defendant proffers a RCV of $200,733.76, (D.E. No. 25-9, Ex. H, Tobler Letter). Defendant offers a depreciation amount, approximately 42.99%, (*see id.*) (stating depreciation of $86,304.57 on the RCV of $200,733.76). Plaintiff does not cite direct evidence of a disputed depreciation value, nor does Plaintiff argue that he has provided the Court with record evidence of a disputed depreciation value.[2] Thus, preliminarily, Plaintiff has failed in its obligation to "support [his assertion of a dispute as to ACV] by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). In light of *Elberon*, Plaintiff would need to provide a depreciation value along with evidence of a disputed RCV in order to challenge ACV. As such, in order to survive summary judgment, a dispute over RCV alone is insufficient for a breach of contract claim for failure to pay ACV.

### ii. Plaintiff Cannot Cite Defendant's Depreciation Value In Support of His Factual Position

Defendant argues that Plaintiff cannot cite to the depreciation value contained in Defendant's proffered RCV, depreciation, and ACV exhibit because the depreciation value was not assigned to the loss as a whole but was instead varied depending on the type of property destroyed. (Def. Supp. Br. at 14-15). Contrarily, Plaintiff argues that the factfinder could use the depreciation value used by Defendant. (Tr. 35:1-10). While Plaintiff does not directly argue that the Court should apply Defendant's contents' depreciation value to Plaintiff's proffered contents' RCV, (*see* Tr. 15:25-25:25), presumably Plaintiff intends for the Court to apply a similar analysis as what Plaintiff urges on structure, (Tr. 35:1-10), and so the Court would be

---

[2] The Court notes that Plaintiff's Opposition to the instant motion only included a single exhibit—Plaintiff's Certification. (*See* D.E. No. 28).

encouraged to look at Exhibit H, (D.E. No. 25-9, Ex. H, Tobler Letter), for a proffered depreciation value.

The Court rejects Plaintiff's argument for the following three reasons.  First, Plaintiff offers no legal authority which supports the Court assigning Defendant's proffered depreciation value to Plaintiff's different and larger RCV value, and thus, this would not be a reasonable inference for the Court to draw.  Second, there is record evidence as to contents which suggests that Plaintiff's proffered RCV is different than Defendant's in large part due to Plaintiff claiming items different from those Defendant considered.  (D.E. No. 25-9, Ex. J at 4).  So, the parties are discussing different property.  It would not be a reasonable inference for the Court to apply a depreciation value that Defendant created based on different underlying property to Plaintiff's RCV.  Third, to the extent that Plaintiff argues that Defendant's depreciation value based on the property it was assessing is so similar to the underlying property that Plaintiff claims that the same depreciation can be assigned, this factual assertion is not made by reference to record evidence, rather it is merely made by attorney argument.

Thus, Plaintiff cites record evidence of a proffered RCV value without a depreciation value.  The New Jersey Supreme Court has explicitly rejected RCV alone (i.e., without depreciation) as a measure of ACV.  Thus, here, Plaintiff has failed to show a disputed ACV by citation to record evidence.  And so, Plaintiff has failed to raise a genuine issue of material fact as to a breach of contract for failure to pay proper ACV as to contents.

### iii.  Plaintiff Cannot Reserve Until Trial Bringing Forth Evidence of a Depreciation Value

Defendant argues that Plaintiff may not rely on the mere allegations of his pleadings and may not wait until trial to present his proof of ACV.  (Def. Rep. Br. at 7-10).  Plaintiff argues that he may provide testimony as to depreciation at trial.  (Pl. Br. at 5).

It is a fundamental principle of summary judgment that the parties must present record evidence at the motion lest summary judgment fails to serve its purpose. The Second Circuit recognized this idea, stating,

> "[Here,] we have from the plaintiff not even a denial of the basic facts, but only an assertion that at trial she may produce further evidence, which she is now holding back, to controvert [defendant's defense to plaintiff's claim]. If one may thus reserve one's evidence when faced with a motion for summary judgment [, summary judgment would be rarely useful]."

*Engl v. Aetna Life Ins. Co.*, 139 F.2d 469, 473 (2d Cir. 1943). The Third Circuit adopted the *Engl* court's reasoning, stating "mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment." *Out Front Prods., Inc. v. Magrid*, 748 F.2d 166, 172 (3d Cir. 1984).

Accordingly, the Court finds that Plaintiff's argument that he will present evidence of depreciation of contents at trial is not credited. A litigant opposing summary judgment and thus one "asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). Further, "[t]he opponent of summary judgment shall furnish . . . a responsive statement of material facts . . . stating each material fact in dispute and citing to the affidavits and other documents." L. Civ. R. 56.1.

As noted above, the material fact that Plaintiff must challenge in this motion is whether Defendant paid the proper ACV. One way to demonstrate an ACV is to show a RCV *and* a depreciation value. Plaintiff attempts to cite a depreciation value by asserting that he will produce such a value at trial, however, this is improper under the Federal Rules of Civil Procedure and has been rejected persuasively and emphatically by the Second Circuit, and adopted by the Third Circuit. *See Out Front Prods.*, 748 F.2d at 172. The Court finds the Second Circuit's reasoning in *Engl* persuasive. Thus, Plaintiff's assertion that he will testify as

8

to a depreciation value at trial does not raise a genuine issue of material fact as to the ACV paid on contents.

### C. Plaintiff Has Not Presented Evidence of a Genuine Issue of Material Fact as to Breach of Contract for Failure to Pay Proper ACV on Structure

Defendant argues that Plaintiff has failed to put forth record evidence that Defendant erred in its payment of ACV for the structure and thus Plaintiff has failed to demonstrate that there is a genuine issue of material fact as to any breach of contract because, in relevant part, the contract provides for payment of ACV.  (Def. Rep. Br. at 5-7).  Plaintiff disagrees, arguing that there is record evidence which shows that there was a disagreement between the Plaintiff's engineer and Defendant's engineer about whether the house could be repaired and thus there is a dispute about how much should have been paid to Plaintiff.  (Tr. 30:25-32:7) (citing D.E. No. 25-9, Ex. I at page "Turk000892").  Plaintiff further argues that the factfinder can consider Defendant's proffered depreciation value as Plaintiff's record evidence of a depreciation value. (Tr. 35:1-10; Pl. Br. at 5).

The policy states, with respect to buildings, Defendant "will pay no more than the actual cash value of the damage until actual repair or replacement is complete."  (D.E. No. 25-6, Ex. B, the Policy at "Turk000807"00—or 10 of 18).

As noted above, the New Jersey Supreme Court concluded that "an appraisal based on replacement cost without consideration of depreciation does not measure 'actual cash value.'" *Elberon*, 77 N.J. at 10.  The *Elberon* court further noted that "to the extent that replacement cost is or may be a proper criterion of actual cash value, there must normally be a deduction for depreciation lest the insured receive more than indemnity for his loss." *Id.* at 15.  Thus, one method a plaintiff can use to establish a dispute as to ACV is to cite record evidence of a disputed RCV, along with a depreciation value.

9

Here, there is record evidence of a dispute as to RCV values—Plaintiff's expert asserts a value of $335,767, (*see* D.E. No. 25-16, Ex. N, Tepper Estimate),[3] while Defendant asserts a RCV value of $201,871.28, (*see* D.E. No. 25-16, Ex. M, Ellis Letter). Plaintiff submits no exhibit to establish depreciation but there is record evidence of a depreciation value assigned to the Defendant's proffered RCV—approximately 10.1%, (*see id.*) (stating depreciation of $20,365.34 on the RCV (after deductible) of $201,621.28), which Plaintiff argues should be applied as his proffered depreciation value, (Tr. 35:1-10).

Similar to contents, the parties discuss different underlying property: Plaintiff's additional proffered RCV above Defendant's arises from Plaintiff's RCV, including damage that occurred after Defendant last stated its RCV. (Tr. 30:18-31:12; Ellis Letter *cf.* Tepper Estimate). Thus, similar to contents, there is no basis for the Court to use Defendant's depreciation value to establish Plaintiff's proffered ACV. Also, Plaintiff has submitted the factual assertion that Defendant's depreciation value is reasonably related to Plaintiff's proffered RCV by attorney argument rather than citation to record evidence.

Similar to the Court's analysis on contents, Plaintiff has failed under *Elberon* to present the Court with record evidence indicating a genuine issue of material fact that Defendant breached the Policy by paying an incorrect ACV.

### D. Defendant is Granted Summary Judgment as to Garage Contents

Defendant argues that it should be granted summary judgment as to Plaintiff's claim of breach of contract for damages related to the contents of the garage because the Policy excludes damages caused by rodents. (Def. Br. at 14). Plaintiff argues that the garage damages, even if

---

[3] While Plaintiff does not cite Exhibit N, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

caused directly by rodents, were ultimately caused by the fire and so coverage should be provided. (Pl. Br. at 7).

Here, the North Jersey Public Adjusters Report by Jamie Walker identified "included items from garage" as "unsupported" because "the items in the garage were deemed to be unaffected by all parties present." (D.E. No. 25-9, Exhibit J). Similar to the Court's analysis as to contents generally, Plaintiff did not provide a depreciation value for the garage contents. Also, since Defendant did not consider the garage contents in its loss estimate, there is no record evidence of a depreciation value that Plaintiff can cite. Thus, without a depreciation value, Plaintiff cannot present a genuine issue of material fact as to whether Defendant breached the Policy by paying improper ACV as to garage contents.

### E. Whether or not Plaintiff May Recover RCV Without Commencing Repairs

The parties dispute whether Plaintiff can recover RCV at trial without replacing the damaged structure. Parties dispute the proper interpretation of *Ward v. Merrimack Mut. Fire Ins. Co.*, 332 N.J. Super. 515, 521-27 (App. Div. 2000). (Tr. At 35:23-37:17; Def. Supp. Br. at 12-14). Defendant argues that *Ward* is distinguishable from the instant case because *Ward* involved a situation where the insurance company declined the claim, thus not paying any ACV. (Def. Supp. Br. 15-17). Plaintiff argues that *Ward* allows an insured to receive full RCV without conducting repairs and this law is apt to the instant case. (Tr. 35:22-37:17).

*Ward* and the cases the *Ward* court cites are all distinguishable from the instant case because all of those cases involved situations where the insurance company declined the claim and did not pay any ACV. Here, the insurance company paid the insured substantial sums of money. Thus, without commencing repairs, Plaintiff is not entitled to RCV.

### IV.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment as to Plaintiff's breach of contract claim for improper payment of ACV is granted. An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
